UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W THROWER,<br>  Plaintiff,<br>v.<br>WELLS FARGO BANK, NA,<br>  Defendant. | Case No. 24-cv-05047-DMR<br><br>**ORDER ON SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**<br>Re: Dkt. No. 26 |

Plaintiff David Thrower filed this action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). [Docket No. 1 (Compl.).] Wells Fargo now moves to strike or, in the alternative, to dismiss the complaint pursuant to California's anti-SLAPP statute, California Code of Civil Procedure section 425.16; and Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). [Docket No. 26.] For the following reasons, the motion to dismiss is granted. The anti-SLAPP motion is denied for lack of subject matter jurisdiction.

**I.  BACKGROUND**

Thrower makes the following allegations in the complaint, all of which are taken as true for purposes of these motions.[1] Thrower is a Florida resident and co-owner of the corporation Cerebros Proof Inc. ("Cerebros"). Compl. ¶ 13. His significant other, Jennifer V. Lopez, is also a co-owner of Cerebros. *Id.* at ¶ 14. Together they "jointly hold substantial shares" in Cerebros and "have played active roles in the management and strategic direction of the company." *Id.* at ¶ 17. On April 2, 2024, Wells Fargo initiated a lawsuit in state court against Lopez to collect $12,856.67 in credit card debt ("the Florida Action"). *Id.* at ¶ 18; *see also Wells Fargo Bank, N.A. v. Lopez*,

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

50-2024-CC-004812-XXXA-MB, Circuit Court, 15th Judicial Circuit, Palm Beach County, FL.[2] Thrower asserts that the debt collection lawsuit against Lopez was in fact "part of a broader scheme threatening to influence and disrupt the operations of a joint business venture, Cerebros Proof Inc. . . . as a mechanism to extort [Thrower] into paying off [Lopez's] debts." Compl. ¶ 1. This is because Lopez is "insolvent and lacks assets," with her "financial stakes primarily tied to her shareholdings in Cerebros Proof Inc." *Id.* at ¶¶ 18-19. Throughout the course of the Florida Action, Wells Fargo "intimated through various legal channels that failure to resolve the purported debts could lead to attempts to seize Ms. Lopez's shares in Cerebros Proof Inc. Such actions would disrupt the governance structure of the company and could potentially grant [Wells Fargo] undue influence over its operations." *Id.* at ¶ 23.

Thrower also describes the 15th Judicial Circuit of Florida as a "supplemental Respondent," and alleges that it facilitated Wells Fargo's misuse of the judicial system "by applying divisional case management orders to bypass the process to set local rules, so setting de facto divisional rules that contradict statewide dismissal procedures, selectively affecting indigent pro se litigants." *Id.* at ¶ 28. The 15th Judicial Circuit of Florida is not a defendant in this case.

Thrower brings eight claims: 1) violation of the right to a fair trial and due process under the Seventh and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; 2) extortion under 18 U.S.C. § 1951; 3) wire fraud under 18 U.S.C. § 1343 and conspiracy under 18 U.S.C. § 371; 4) mail fraud under 18 U.S.C. § 1341 and conspiracy under 18 U.S.C. § 371; 5) violation of the Americans with Disabilities Act (ADA); 6) intentional infliction of emotional distress; 7) breach of the covenant of good faith and fair dealing; and 8) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).

This complaint was filed on August 12, 2024. On November 14, 2024, the state court in the Florida Action granted summary judgment in favor of Wells Fargo and against Lopez and entered default against Lopez.

---

[2] The court takes judicial notice of the Florida Action state court record as a matter of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## II.  LEGAL STANDARDS

Pleadings by a self-represented litigant must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). "This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). "This duty applies equally to pro se motions." *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020). However, "a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

### A.  FRCP 8(a)

Rule 8(a) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he short and plain statement must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quotation omitted).

### B.  FRCP 12(b)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction. A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted). When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on

3

their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge asserts that subject-matter jurisdiction does not exist, independent of what is stated in the complaint. *White*, 227 F.3d at 1242. In contrast with a facial challenge, a factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *Id*. (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### C.  FRCP 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

### D.      California Anti-SLAPP Motions in Federal Court

Known as the "anti-SLAPP" statute,[3] California Code of Civil Procedure section 425.16 "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Jordan-Benel v. Universal City Studios,*

---

[3] "SLAPP" is an acronym for "strategic lawsuit against public participation."

4

1    *Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832,
2    839 (9th Cir. 2001)).  The statute provides that a claim against an individual "arising from any act
3    of that person in furtherance of the person's right of petition or free speech" under the U.S. or
4    California constitutions "shall be subject to a special motion to strike, unless the court determines
5    that the plaintiff has established that there is a probability that the plaintiff will prevail on the
6    claim."  Cal. Civ. Proc. Code § 425.16(b)(1).  The anti-SLAPP statute further provides that "a
7    prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's
8    fees and costs."  Cal. Civ. Code § 425.16(c).  "[A] federal court can only entertain anti-SLAPP
9    special motions to strike in connection with state law claims."  *Hilton v. Hallmark Cards*, 599
10   F.3d 894, 900-01 (9th Cir. 2010).

**III.    DISCUSSION**

**A.    Article III Standing**

Wells Fargo moves to dismiss the complaint under Rule 12(b)(1) because it argues that Thrower lacks standing.

The question of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III [of the U.S. Constitution]." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  Because standing is a jurisdictional issue, it is properly addressed under a Rule 12(b)(1) motion.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "Where standing is raised in connection with a motion to dismiss, the court is to accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party."  *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 597 (9th Cir. 2020) (quotations omitted).  To satisfy Article III's standing requirements, a plaintiff must show "(1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

Thrower fails to show Article III standing in his complaint.  He alleges that because of

Wells Fargo's actions against Lopez, Wells Fargo caused Thrower "emotional distress, financial strain, and significant disruption to the operational stability of Cerebros Proof Inc." Compl. ¶ 36. However, the main source of Thrower's distress is alleged to be the possibility that Lopez's default could cause Wells Fargo to attempt to seize Lopez's shares in Cerebros, which could grant Wells Fargo influence over Cerebros, which could harm Thrower's interests as a co-owner of Cerebros. *Id.* at ¶ 23. Injuries such as "mitigation costs and emotional distress . . . can only qualify as concrete injuries in fact when they are based on a risk of harm that is either 'certainly impending' or 'substantial.'" *I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) (citing *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 422 (2013)). "[N]o Article III standing exists if a plaintiff's theory of injury rests on an 'attenuated chain of inferences necessary to find harm.'" *Id.* (citing *Clapper*, 568 U.S. at 414 n.5). The court is not persuaded that Wells Fargo's seizure of Lopez's shares is more than speculative. But even if Thrower were able to plausibly allege that it is certain that Wells Fargo will seize Lopez's shares, Thrower does not allege facts to explain why the seizure of approximately $13,000 worth of shares would have enough of an impact on the governing structure of Cerebros that it would harm Thrower's legal interest in Cerebros. It does not appear that Thrower's own shares or his own ability to control the company are at risk. Thrower's interest in maintaining Lopez as co-owner of the company simply because he wants her to be is not a legally cognizable interest and cannot demonstrate Article III standing.[4]

### B. Merits of Claims

Even if Thrower could allege facts to support Article III standing, the complaint fails. Wells Fargo argues that the complaint does not satisfy Rule 8 pleading requirements because it is "incoherent" and "fail[s] to identify the specific conduct [] at issue and how Plaintiff has purportedly been harmed." Mot. 22. Wells Fargo also argues that the complaint must be

---

[4] In his opposition, Thrower clarifies that he also suffered emotional distress because Lopez is his significant other and the Florida Action caused Lopez to exhibit "erratic outbursts of screaming, aggressive actions, passively suicidal comments . . . and frequent discussions about estate distribution." [Docket No. 34 (Opp'n) 6.] Facts raised for the first time in a plaintiff's opposition papers can only be considered by the court in determining whether to grant leave to amend. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). As amendment would be futile for other reasons discussed below, this point is moot.

1  dismissed under Rule 12(b)(6). Specifically, Wells Fargo argues that its conduct was protected by
2  the *Noerr-Pennington* doctrine under federal law and the litigation privilege under California state
3  law. Wells Fargo also argues that each claim fails to state a claim upon which relief may be
4  granted.

### 1.     Protected Conduct

"Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Although the doctrine was developed in the antitrust context, it has since been extended, and now "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause . . . and may also be applicable in construing the reach of common law causes of action." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1139 (9th Cir. 2013). "Litigants are immune from liability that arises out of their petitioning activity, i.e. the filing of a lawsuit, as well as conduct 'incidental to the prosecution of the suit,' unless such activity is a 'sham.'" *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1027 (N.D. Cal. 2018) (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009)).

Thrower argues that the alleged conduct by Wells Fargo fell outside the scope of petitioning activity because it involved "[p]ressuring Plaintiff to pay another's debt." Opp'n 15. But as far as the court can understand Thrower's allegations, Wells Fargo's conduct consists only of bringing litigation against Lopez to collect a debt, telling Lopez "through various legal channels" that default may result in Lopez's Cerebros shares being seized, and refusing to "mitigate harm by waiving their right to post-judgment claims on [Lopez's] shares" in Cerebros. Compl. ¶ 23; Opp'n 16. This is all conduct "incidental to the prosecution of the suit." *Gamble*, 348 F. Supp. 3d at 1027. Thrower does not allege that Wells Fargo engaged in any improper conduct outside filing the lawsuit and communicating with Lopez about the legal consequences of default. The fact that Thrower felt pressured by Wells Fargo's litigation activities because of his personal, non-legal interest in Lopez's shares does not create a novel exception to the *Noerr–*

1 *Pennington* doctrine.

2     Next, Thrower attempts to argue that the sham exception applies. "*Noerr–Pennington* immunity is not a shield for petitioning conduct that, although 'ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (citing *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 144 (1961)). "The Ninth Circuit applies a 'a strict two-step analysis to assess whether a single action constitutes sham petitioning. This inquiry is essentially retrospective: If the suit turns out to have objective merit, the plaintiff can't proceed to inquire into subjective purposes, and the action is perforce not a sham.'" *Realtek Semiconductor Corp. v. MediaTek, Inc.,* 732 F. Supp. 3d 1101, 1114 (N.D. Cal. 2024) (citing *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810–11 (9th Cir. 1994)).

    Thrower argues that the subjective intent of the Florida Action was improper. Opp'n 16-17. However, Thrower does not plead that the suit against Lopez had no objective merit. For example, Thrower does not plead that Lopez did not owe a debt to Wells Fargo or that Wells Fargo did not have the legal right to seize her shares of Cerebros if she defaulted on the debt. In addition, the Florida state court ruled for Wells Fargo and against Lopez on summary judgment and entered default against Lopez. Regardless of Wells Fargo's subjective intent, Thrower cannot show that the Florida Action was a "sham."

    All of Thrower's statutory claims arise solely from the Florida Action and Wells Fargo's conduct incidental to that litigation. Therefore, Thrower's claims are barred under the *Noerr–Pennington* doctrine.

    Likewise, the California litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990); *see also* Cal. Civil Code § 47(b). For the same reasons as above, Thrower's state law claims are also barred under the litigation privilege.

### 2. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

Thrower raises no allegations against Wells Fargo that are not incidental to the Florida Action. In addition, Thrower cannot demonstrate that the Florida Action was a "sham" because there is clearly objective merit to the lawsuit against Lopez—Thrower concedes that Lopez owed the credit card debt to Wells Fargo and that Wells Fargo had the right to collect on the debt by seizing her shares in Cerebros. Opp'n 5, 16. In his opposition, Thrower attempts to add allegations that Wells Fargo acted unlawfully by "failing to address a conflict of interest that exerts pressure on a 3rd party to pay Mrs. Lopez balance, refusing ADR, targeting a judgment-proof debtor while ignoring more viable targets, and negligently allowing a public assistance recipient to accrue a $12,000 debt." Opp'n 11. None of this conduct states a meritorious claim that Thrower has standing to bring.

Even liberally construing the pleading in deference to Thrower's self-represented status, it is clear that amendment would be futile. The court dismisses his complaint with prejudice and without leave to amend.

### C. Anti-SLAPP Motion

Wells Fargo moves to strike Thrower's state law claims pursuant to California's anti-SLAPP statute. Mot. 13. A successful anti-SLAPP motion mandates that the movant be granted attorneys' fees and costs. Cal. Civ. Code § 425.16(c).

As stated above, the court lacks subject matter jurisdiction over the case because Thrower did not plead Article III standing. "A court that lacks jurisdiction at the outset of a case lacks the

authority to award attorneys' fees." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007). The court does not have jurisdiction to rule on Wells Fargo's anti-SLAPP motion. *See Stahl L. Firm v. Judicate W.,* No. C13-1668 TEH, 2013 WL 6200245, at *7 (N.D. Cal. Nov. 27, 2013); *Bribiesca v. Procopio, Cory, Hargreaves, & Savitch*, LLP, No. 316CV01225BENWVG, 2017 WL 87110, at *10 (S.D. Cal. Jan. 10, 2017), *aff'd*, 704 F. App'x 688 (9th Cir. 2017).

Wells Fargo's special motion to strike is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Wells Fargo's motion to dismiss the complaint for lack of Article III standing. The dismissal is with prejudice. The Court DENIES Wells Fargo's anti–SLAPP attorneys fees' for lack of jurisdiction. The Clerk is directed to enter judgment for Wells Fargo against Thrower.

**IT IS SO ORDERED.**

Dated: May 9, 2025

_____
Donna M. Ryu
Chief Magistrate Judge